[Cite as *In re B.C.*, 2018-Ohio-2673.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2018-03-024 |
| B.C., et al. | : | CA2018-03-027 |
| | : | O P I N I O N |
| | | 7/9/2018 |
| | : | |
| | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 16-D000146 and 16-D000147


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children Services

Andrea Ostrowski, 20 South Main Street, Springboro, Ohio 45066, guardian ad litem

Sarah E. Michel, 1329 East Kemper Road, Suite 4230, Cincinnati, Ohio 45246, attorney for children

Lauren L. Clouse, 7681 Tylers Place Blvd., Suite 3, West Chester, Ohio 45069, for appellant, C.S.


**HENDRICKSON, P.J.**

{¶ 1} Mother-appellant ("Mother"), appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of B.C. and A.C. (referred to collectively, as the "children") to Warren County Children Services ("WCCS").

**{¶ 2}** On October 7, 2016, WCCS filed a complaint alleging dependency, abuse, and neglect. The juvenile court held an emergency shelter care hearing and placed the children in the temporary custody of WCCS. A few months later, the juvenile court adjudicated the children dependent and neglected. The juvenile court held a dispositional hearing and granted temporary custody to WCCS. On October 6, 2017, WCCS moved for permanent custody. On January 29, 2018, during the permanent custody proceedings, Mother orally moved to continue the hearing and for a six-month extension of temporary custody. The permanent custody hearing revealed the following facts.

**{¶ 3}** Lisa Dabbelt, a caseworker for WCCS, testified she was assigned to this case from its commencement in October 2016. The case began when WCCS received a referral claiming the children's parents, Mother and her now-deceased husband ("Father"), often left the children unsupervised. The referral also specified Mother displayed some indicators she may be engaged in illegal drug use. At the time of the referral, B.C. was six years old and A.C. was four years old. WCCS created a case plan for reunification for Mother. The case plan included objectives to remain free from illegal drug use, submit to random drug screens, complete drug and alcohol and mental health assessments and follow any recommendations, comply with her current prescribed medication plan and submit to random pill counts, sign all releases, maintain safe and secure housing, maintain employment, avoid unnecessary law enforcement encounters, attend visitation, and complete a parenting course.

**{¶ 4}** Mother completed a mental health assessment and began the recommended treatment by participating in a dual recovery group for both mental health issues and drug addiction. However, the recovery group involuntarily discharged Mother due to her lack of attendance. WCCS had no knowledge of any further mental health treatment sought by Mother. Mother completed a drug and alcohol assessment and entered the recommended intensive outpatient program. However, the outpatient program likewise involuntarily

discharged her for lack of attendance. Shortly after, Mother entered an inpatient program at Adams Recovery, but voluntarily left the program after ten days. Mother returned to the original outpatient drug program, but was again involuntarily discharged for lack of attendance. Mother completed a parenting course, but failed to complete the additional classes recommended by the parenting coach.

{¶ 5} Mother's case plan included weekly supervised visitation. Mother attended this visitation at the beginning of the case, but her attendance became sporadic in April 2017. Mother's visitation was suspended in July 2017 due to lack of attendance. Mother attended 25 of 36 scheduled visits. The last visit occurred on July 19, 2017. Mother maintained adequate housing during the case, but failed to maintain employment. Mother returned both positive and negative drug screens. The positive screens indicated either non-prescribed prescription medication or alcohol. Mother served a 30-day jail sentence for operating a vehicle under the influence of alcohol, which stemmed from a traffic stop in December 2017.

{¶ 6} The guardian ad litem ("GAL") for the children submitted a written report and recommended granting permanent custody to WCCS. Mother testified she loves the children and wishes for them to be returned to her custody. Mother explained she began to work through her case plan objectives, but her progress halted due to transportation issues and a lack of motivation and depression after the sudden death of Father. Mother testified the burden became too heavy, but that she cares for her children and wants to progress through her case plan and achieve reunification.

{¶ 7} On February 7, 2018, the juvenile court granted permanent custody to WCCS and denied Mother's oral motion to continue and for an extension of temporary custody. Mother appealed the juvenile court's decisions.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING

EVIDENCE, THAT THE CHILDREN COULD NOT BE PLACED WITH MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH HER, PURSUANT TO R.C. 2151.414(B)(1)(A)-(D).

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BEST INTEREST OF THE CHILDREN, PURSUANT TO THE FACTORS SET FORTH IN R.C. 2151.414(D), WAS REACHED BY GRANTING PERMANENT CUSTODY TO WARREN COUNTY CHILDREN SERVICES.

{¶ 12} Mother asserts the juvenile court erred by granting permanent custody to WCCS because its decision was unsupported by clear and convincing evidence and against the manifest weight of the evidence. Mother contends the juvenile court erred in finding by clear and convincing evidence that Mother abandoned the children and that the children could not or should not be placed with her within a reasonable time. Mother further contends several best interest factors weighed in favor of denying WCCS' motion. Specifically, B.C. wished to return to Mother's care, Mother completed multiple case plan objectives, and Mother demonstrated the ability to parent during visitation.

{¶ 13} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979).

- 4 -

However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

**{¶ 14}** The state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's right to custody can be terminated. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

**{¶ 15}** A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10.

{¶ 16} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the children. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 17} On the other hand, pursuant to R.C. 2151.415(D) and Juv.R. 14, a juvenile court may extend a temporary custody order for a period up to six months, if it determines by clear and convincing evidence that the extension (1) is in the best interest of the child, (2) there has been significant progress on the case plan of the child, and (3) there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. *See In re H.G.*, 12th Dist. Clinton No. CA2014-11-014, 2015-Ohio-1764, ¶ 19.

{¶ 18} Pursuant to R.C. 2151.011(C) and 2151.414(B)(1)(b), the trial court found Mother abandoned the children. "For purposes of [Chapter 2151], a child shall be presumed

abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶ 19} Mother contends she did not intentionally abandon her children because her visitation was suspended in July 2017 and never resumed; therefore, she was unable to visit with the children. However, the record is clear that Mother's visitation was suspended due to her rapidly declining attendance. The caseworker testified Mother attended visitation consistently at the outset of the case, but in April 2017 began frequently cancelling visitation. Likewise, at the beginning of the case, Mother engaged in other case plan services, but over time her participation ceased. The caseworker testified she informed Mother that she must reengage with her case plan services for visitation to resume. Mother voluntarily chose not to do so, and therefore, did not have any contact with the children for more than 90 days. Thus, it was Mother's active choices that led to her inability to see the children, and the juvenile court's finding of abandonment is supported by clear and convincing evidence. *See In re P.D.*, 12th Dist. Preble Nos. CA2015-02-008 and CA2015-03-010, 2015-Ohio-2829, ¶ 21, citing *In re C.C.*, 12th Dist. Warren Nos. CA2011-11-113 and CA2011-11-127, 2012-Ohio-1291, ¶ 19 (affirming trial court's finding of abandonment where the trial court suspended the parents' visitation but "it was the parents' voluntary action in failing to consistently visit with the children, along with their failure to begin making any progress on the case plan, which led to the suspension of visitation").

{¶ 20} The trial court found in the alternative that pursuant to R.C. 2151.414(B)(1)(a) and (E), the children could not be placed with Mother within a reasonable time or should not be placed with her. Mother disputes the juvenile court's consideration of the statutory factors under R.C. 2151.414(E). Considering our holding the juvenile court's abandonment finding was supported by clear and convincing evidence, we find Mother's contentions with respect

to R.C. 2151.414(E) moot. As discussed above, the juvenile court need only make one of the five findings enumerated in R.C. 2151.414(B)(1)(a) thru (e). *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12. Nonetheless, we analyze the juvenile court's finding under R.C. 2151.414(E) below, as the juvenile court incorporated it's finding into its analysis of the best interest factors.

{¶ 21} We next turn to Mother's arguments regarding the juvenile court's best interest finding. R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} In granting WCCS' motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to the first statutory factor, the juvenile court found the children's respective placements are currently separate, but WCCS is diligently working to keep the children together in anticipation of adoption. The children are stabilized and have either received, or

are receiving, treatment for behavioral issues. Their current placements are meeting their needs and their only chance at stability is by granting permanent custody, so that WCCS can arrange for adoption.

{¶ 23} In consideration of the second statutory factor, the juvenile court did not conduct an interview with the children. The juvenile court relied on the GAL's report to convey the children's wishes. The juvenile court acknowledged B.C.'s wish to return to Mother's custody. However, it found the best interest of the children is best served by granting permanent custody.

{¶ 24} With respect to the third statutory factor, the juvenile court reviewed the children's custodial history and found the children have been in WCCS' custody since the beginning of the case.

{¶ 25} In considering the fourth statutory factor, the juvenile court found the children's need for a legally secure placement could only be achieved by granting permanent custody to WCCS. Specifically, the juvenile court found Mother is unable to meet the children's needs and she has failed to remedy the conditions causing their removal. Mother is not able to be reunified with the children within a reasonable time. The juvenile court noted adoption is the best chance for the children to achieve the stable home environment they need.

{¶ 26} With respect to the fifth statutory factor, the juvenile court incorporated its finding pursuant to R.C. 2151.414(E) that the children could not be placed with Mother within a reasonable time or should not be placed with her. The juvenile court found that notwithstanding reasonable case planning and diligent efforts by WCCS, Mother failed continuously and repeatedly to substantially remedy the conditions causing the children's removal. The juvenile court found Mother abandoned the children and demonstrated a lack of commitment to them by failing to regularly support, visit, or communicate with them when able to do so, or by other actions showed an unwillingness to provide an adequate

permanent home. The juvenile court further found Mother was unwilling to provide food, clothing, shelter, and other basic necessities for the children as demonstrated by her lack of compliance with changing behaviors which led to the case being filed in the first place.

{¶ 27} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to WCCS. Mother disputes the juvenile court's consideration of the statutory factors.

{¶ 28} After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence. *In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 31-38 (holding a grant of permanent custody is in a child's best interest where a parent fails to make any significant progress in his or her case plan and fails to remain drug free). Although Mother testified she loves her children and wishes for reunification, there are compelling reasons to weigh the best interest factors in favor of permanent custody to WCCS.

{¶ 29} Mother asserts that if given an opportunity to continue to work through her case plan, then reunification is still possible. In so doing, Mother contends she discontinued her involvement with WCCS because her husband's sudden death left her overwhelmed and grief-stricken. While this court is sympathetic to Mother's loss, we are unconvinced that Father's death justifies abandoning her children. We acknowledge Mother began some of her case plan services at the outset of this case. However, she consistently failed to follow through and has yet to fully complete a single case plan objective beyond maintaining housing. As we found above, Mother did not have any contact with her children for an extended period and voluntarily chose to disregard the means available to her to resume contact.

{¶ 30} Mother's claim that enough time has passed that she's ready to reengage with WCCS provides little assurance that she will follow through and achieve a stable home that

can provide permanency for the children. Rather, her claim requires this court to speculate whether she can complete any appreciable steps towards reunification, despite the weight of the evidence demonstrating an unwillingness to complete any objectives. *In re E.F.*, 12th Dist. Clinton Nos. CA2016-03-003 thru CA2016-03-007, 2016-Ohio-7265, ¶ 34. "To anticipate the future, however, is at most a difficult basis for a judicial determination. [A] child's present condition and environment is the subject for decision[,] not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]." *Id.*, citing *In re R.S.-G.*, 4th Dist. Athens No. 15CA2, 2015-Ohio-4245, ¶ 53. "The law does not require the court to experiment with [a] child's welfare to see if [the child] will suffer great detriment or harm." *In re R.S.-G.* at ¶ 53.

{¶ 31} While Mother demonstrated some initiative at the start of this case towards beginning the objectives in her case plan, the record supports the juvenile court's finding she has failed to substantially remedy the conditions causing the children's removal and the children should not and cannot be placed with her within a reasonable period of time. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23 (a parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal); *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32.

{¶ 32} In addition to Mother's inability to complete treatment stemming from her mental health and drug and alcohol assessments, Mother has also failed to abstain from criminal activity and has returned several positive drug screens. While Mother's testimony demonstrates that she hopes to remain drug free and provide for the children, the best interest of the children is not served by another six months of wishful thinking where competent, credible evidence, heavily points in the opposite direction. Additionally, despite the effort of WCCS to achieve reunification, Mother voluntarily chose not to complete a single case plan service beyond maintaining housing.

**{¶ 33}** "It is important to have finality in custody determinations to protect the best interest of the child[ren]." *In re A.L.A.*, 11th Dist. Trumbull No. 2016-T-0022, 2016-Ohio-5887, ¶ 20. The children need to know whom they may rely upon for their care and nurture, and as the juvenile court found, the only way to achieve this is by a stable, permanent, and healthy, home environment. The children deserve a stable environment that is not plagued by the risk of neglect and illegal drug use. In light of the foregoing, permanency for the children is not promoted by granting Mother's motion for a six-month extension of temporary custody.

**{¶ 34}** Therefore, the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence.

**{¶ 35}** Accordingly, Mother's assignments of error are overruled.

**{¶ 36}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.