[Cite as *In re S.M.*, 2018-Ohio-4654.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. CA2018-07-076 |
| S.M. | : | O P I N I O N |
| | | 11/19/2018 |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 16-D000157

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, OH 45036, for plaintiff-appellee

Engel & Martin, LLC, Mark K. Martin, 4660 Duke Drive, Suite 101, Mason, OH 45040, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1}  Appellant, the biological mother of S.M. ("Mother"), appeals the decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her son, S.M., to appellee, Warren County Children Services ("WCCS").  For the reasons outlined below, we affirm the juvenile court's permanent custody determination.

**Facts and Procedural History**

{¶ 2}  On October 21, 2016, Mother gave birth to S.M.  Four days later, WCCS filed a complaint alleging S.M. was a dependent child.  In support of its complaint, WCCS noted

that it was then involved in an ongoing dependency case regarding one of Mother's other children, A.M. It is undisputed that A.M. was then in the temporary custody of her maternal aunt.[1] As part of the case involving A.M., WCCS alleged Mother had not completed certain portions of her case plan; namely, her necessary mental health treatment and required parenting classes.[2] WCCS also noted that it had concerns regarding Mother's housing in that Mother was then residing in an extended-stay motel in hopes of soon moving into a women's shelter. WCCS further alleged that Mother had "refused to disclose information" regarding S.M.'s father.[3]

{¶ 3} After considering WCCS's complaint, the juvenile court granted WCCS's request for protective supervision of S.M. This decision allowed S.M. to remain in Mother's care while WCCS provided "services to the family[.]" The juvenile court then appointed Mother an attorney and a Court Appointed Special Advocate ("CASA") for S.M. The juvenile court thereafter ordered Mother to comply with the case plan established in the ongoing dependency case regarding A.M. The juvenile court then held a pretrial hearing on the matter. Following this hearing, the juvenile court ordered Mother to complete parenting classes with a focus on caring for a newborn.

{¶ 4} On November 17, 2016, WCCS filed a motion requesting emergency temporary custody of S.M. In support of its motion, WCCS noted that Mother had been observed exhibiting erratic behavior and engaging inappropriate conduct while caring for S.M. Specifically, WCCS alleged Mother had ignored S.M.'s needs as he slipped from her

---

1. Mother has two other children who are in the legal custody of their maternal grandmother.

2. The record indicates Mother has been diagnosed with borderline personality disorder with anti-social traits and cocaine use disorder in sustained remission. This diagnosis was based in part on Mother's inability to control her anger, her anxiety, and her belief that she is being monitored through her cell phone. Mother disputes this diagnosis and claims the diagnosis was made solely for insurance purposes.

3. Although there were many attempts to establish paternity, S.M.'s biological father is currently unknown.

lap. WCCS also alleged Mother was feeding S.M. Vitamin D milk instead of formula and that Mother had routinely kept S.M. in a "bouncy chair which is not appropriate for a one-month old." WCCS further alleged the blanket Mother used for S.M. had feces on it and that Mother would sometimes prepare bottles for S.M. that were "scalding hot." The juvenile court granted WCCS's motion upon finding S.M. was "at risk by virtue of the conduct of Mother including improper feeding, dirty bedding, and failure to protect the child." S.M. was then placed in a foster home where he has remained with the same foster family ever since.

{¶ 5} On December 2, 2016, the juvenile court held an adjudication hearing. The juvenile court then issued a decision adjudicating S.M. a dependent child. Approximately one month later, the juvenile court held a disposition hearing. Following this hearing, the juvenile court issued a dispositional decision finding it was in S.M.'s best interest to be placed in the temporary custody of WCCS. A case plan was then established for Mother that required Mother to engage in certain case plan services like those recommended in the ongoing dependency case regarding A.M. These case plan services included, but were not limited to, Mother receiving the necessary treatment for her mental health issues and attending the required parenting classes.

{¶ 6} The case plan also granted Mother four hours of visitation time with S.W. per week. Mother, however, requested a decrease in her visitation time to just two hours per week after complaining anything greater did not fit within her work schedule. Mother made this request despite having only sporadic and intermittent employment through a temp agency or at local fast food restaurants. Shortly after Mother's visitation time was reduced, it is undisputed Mother's visitation time was then indefinitely suspended due to her repeated incarceration, unwillingness to attended certain appointments necessary to complete her case plan services, and poor attendance at her scheduled visitation time with S.M.

{¶ 7} On April 5, 2018, WCCS filed a motion for permanent custody of S.M. In

support of its motion, WCCS argued S.M. could not be placed with Mother within a reasonable time. WCCS also argued S.M. should not be placed with Mother due to her untreated mental health issues, unstable housing, repeated unemployment, and history of incarceration.[4] WCCS further argued S.M. should not be placed with Mother since she "has not regularly exercised visitation with the child and has not had contact with the minor child since January 2017."[5] It is undisputed that during the pendency of this case Mother attended only five of her 29 scheduled visits with S.M. prior to when her visitation time was suspended. It is also undisputed that during one those five visits Mother was arrested on an outstanding warrant for failing to appear on a charge of driving under suspension.

{¶ 8} On June 25, 2018, the juvenile court held a hearing on WCCS's motion for permanent custody. As part of this hearing, the juvenile court heard testimony from Mother and an ongoing case worker assigned to the case. The juvenile court also received information regarding the CASA's report and recommendation to grant permanent custody to WCCS. After taking the matter under advisement, the juvenile court issued a decision granting WCCS's motion for permanent custody. In so holding, the juvenile court determined that WCCS had proven by clear and convincing evidence that "permanent custody of [S.M.] is in his best interest." The juvenile court reached this decision after considering the necessary best interest factors, the report and recommendation of the CASA, as well as by taking into account the credibility of the witnesses and the weight of their testimony.

## Appeal

{¶ 9} Mother now appeals from the juvenile court's decision granting WCCS's

---

4. The record indicates Mother was incarcerated at least three times during the pendency of this case and is currently on probation after being convicted of a theft offense.

5. The record indicates the last day Mother had any contact with S.M. was January 23, 2017.

- 4 -

motion for permanent custody, raising a single assignment of error for review challenging the juvenile court's decision granting WCCS's motion for permanent custody. In support, Mother argues the juvenile court's decision was not supported by sufficient credible evidence and was otherwise against the manifest weight of the evidence. Under these circumstances, this court applies the following standard of review.

**Standard of Review**

{¶ 10} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. This court will therefore reverse a juvenile court's decision only if there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 11} As with all challenges to the manifest weight of the evidence, in determining whether a juvenile court's decision is against the manifest weight of the evidence in a permanent custody case, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley*

*v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

## Analysis

{¶ 12} As noted above, Mother argues the juvenile court's decision to grant WCCS's motion for permanent custody was not supported by sufficient credible evidence and was otherwise against the manifest weight of the evidence. This is because, according to Mother, with an additional reasonable amount of time she could have completed her unfinished case plan services and be reunified with S.M. Mother also argues the juvenile court's decision was improper and not in S.M.'s best interest when taking into consideration her strong bond with S.M. We disagree with Mother's claims.

## Two-Part Permanent Custody Test

{¶ 13} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, pursuant to R.C. 2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-

month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

### Abandonment

{¶ 14} As it relates to the second part of the two-part permanent custody test, the juvenile court found Mother had abandoned S.M. since she had not had any contact with him for a period of more than 90 days. We agree with the juvenile court's decision.

{¶ 15} Pursuant to R.C. 2151.011(C), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Mother disputes the juvenile court's finding she abandoned S.M. claiming any abandonment was not done "willfully." However, contrary to Mother's claim otherwise, it was Mother's own actions that caused in her visitation time being suspended, thereby resulting in the juvenile court's finding she had abandoned S.M. This includes Mother's repeated incarceration, unwillingness to attended the appointments necessary to complete her case plan services, and failure to attend all but five of the 29 scheduled visits with S.M.[6] *See, e.g., In re B.C.*, 12th Dist. Warren Nos. CA2018-03-024 and CA2018-03-

---

6. Despite Mother's arguments to the contrary, we find it clear that Mother's failure to attend her visitation time with S.M. cannot be attributed to WCCS's unwillingness to comply with the juvenile court's orders regarding her visitation time. The same is true regarding Mother's claim that she was prevented from attending her visitation time due to WCCS's aversion to setting up visitation times that fit within her schedule. Simply stated, Mother's failure to attend her visitation time with S.M. was the fault of her and her alone.

- 7 -

027, 2018-Ohio-2673, ¶ 19 (overruling appellant's claim she did not intentionally abandon her child after her visitation time was suspended upon finding it was appellant's "active choices that led to her inability to see the children").

{¶ 16} Prior to the juvenile court's permanent custody hearing held on June 25, 2018, the record indicates Mother had not had any contact with S.M. since January 23, 2017 – a span of 518 days. This was after Mother had already requested a decrease in her visitation time from four hours per week to just two hours per week.[7] Yet, as noted above, even when she did attend her visitation time with S.M., Mother was arrested on an outstanding warrant for failing to appear on a charge of driving under suspension. Therefore, although it is undisputed that Mother's visitation time with S.M. was suspended, the juvenile court's decision finding Mother had abandoned S.M. was nevertheless supported by sufficient credible evidence and was not otherwise against the manifest weight of the evidence.[8] *See, e.g., In re C.C.*, 12th Dist. Warren Nos. CA2011-11-113 and CA2011-11-127, 2012-Ohio-1291, ¶ 19 (juvenile court's finding of abandonment affirmed where juvenile court found "it was the parents' voluntary action in failing to consistently visit with the children, along with their failure to begin making any progress on the case plan, which led to the suspension of visitation"). Mother's claim otherwise lacks merit.

### Best Interest

{¶ 17} Turning now to the first part of the two-part permanent custody test, the juvenile court found it was in S.M.'s best interest to grant permanent custody to WCCS. We

---

7. According to Mother, she requested a decrease in her visitation time to just two hours per week because it "interfered with [her] case plan services and also working."

8. Pursuant to R.C. 2151.414(B)(1)(a) and (E), the juvenile court also found S.M. could not be placed with Mother within a reasonable time or should not be placed with Mother. Mother claims the juvenile court's decision was not supported by the record. However, when considering our determination that the juvenile court's abandonment finding was supported by clear and convincing evidence, we find Mother's contentions with respect to the juvenile court's findings under R.C. 2151.414(B)(1)(a) and (E) moot. This is because, as noted above, the juvenile court need only make one of the five findings enumerated in R.C. 2151.414(B)(1)(a) to (e) to satisfy the second prong of the two-part permanent custody test.

again agree with the juvenile court's decision.

{¶ 18} When considering the best interest of a child in a permanent custody case, the juvenile court is required under R.C. 2151.414(D)(1) to consider certain enumerated factors. *In re D.E.,* 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 32. These factors include, but are not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child. *In re J.C.,* 12th Dist. Brown No. CA2017-11-015, 2018-Ohio-1687, ¶ 22. The juvenile court may also consider any other factor(s) it deems relevant to the child's best interest. *In re N.R.S.,* 3d Dist. Crawford Nos. 3-17-07 thru 3-17-09, 2018-Ohio-125, ¶ 15 ("[t]o make a best interest determination, the trial court is required to consider all relevant factors listed in R.C. 2151.414[D], as well as any other relevant factors").

{¶ 19} Initially, with respect to S.M.'s relevant interactions and relationships with those who may significantly impact his young life, the juvenile court found S.M. was on track developmentally and that his foster family was meeting all of S.M.'s needs. This was the same foster family with whom S.M. was originally placed after the juvenile court awarded WCCS temporary custody. Specifically, as the ongoing case worker testified, S.M. is doing "very well" and "growing appropriately" in his current foster-to-adopt home. Therefore, as the juvenile court found, "[S.M.'s] only chance at stability is to be placed in the permanent custody of WCCS so they can arrange for [S.M.] to be adopted."

{¶ 20} Next, regarding S.M.'s wishes, the juvenile court did not state S.M.'s wishes, likely due to his young age. The juvenile court instead relied on the CASA's report and recommendation that permanent custody should be awarded to WCCS. Upon making this finding, the juvenile court then reiterated its earlier finding that S.M. had been in the temporary custody of WCCS since November 22, 2016. The record supports the juvenile court's finding.

{¶ 21} Moreover, regarding S.M.'s need for a legally secure placement, the juvenile court found S.M.'s need for a legally secure permanent placement could not be achieved without a grant of permanent custody to WCCS. In reaching this decision, the juvenile court found Mother was unable to meet S.M.'s needs and that Mother had otherwise failed to remedy the conditions resulting in S.M.'s removal from her care. This includes, but is not limited to, Mother's failure to receive the necessary treatment for her mental health issues and completion of the required parenting classes. The juvenile court also found Mother was unable to be reunified with S.M. within a reasonable time and that adoption was the best chance for S.M. to achieve the stable familial home that he needs. Given the uncertainty surrounding Mother's housing, employment, frequent incarceration, and untreated mental health issues, the record again supports the juvenile court's finding.

{¶ 22} Finally, with respect to any of the factors contained in R.C. 2151.414(E)(7) to (11), the juvenile court reiterated its previous finding that Mother had abandoned S.M. since she had no contact with him for a period of at least 90 days in accordance with R.C. 2151.011(C). The juvenile court also found that, pursuant to R.C. 2151.414(B)(1)(a) and (E), S.M. could not be placed with Mother within a reasonable time or should not be placed with Mother. This finding, as the juvenile court noted, was based on Mother's failure to utilize rehabilitative services and material resources that were made available to her by WCCS. The juvenile court also noted Mother's demonstrated lack of commitment towards

S.M. and her general unwillingness to provide food, clothing, shelter, and other basic necessitates for S.M. The juvenile court reached this decision upon finding Mother had demonstrated a "lack of compliance with changing behaviors which led to the case being filed in the first place."

{¶ 23} After a thorough review of the record, we find the record fully supports the juvenile court's decision to grant permanent custody of S.M. to WCCS. Mother nevertheless argues the juvenile court erred by granting permanent custody to WCCS without first giving her the opportunity to "show how well" S.M. could do in her care. Mother, however, was given an opportunity to demonstrate her ability to care for S.M. in the month following his birth prior to when the juvenile court granted WCCS's motion for emergency temporary custody. During this time, the record makes clear Mother could not properly care for S.M., thus placing S.M. in significant danger of hampering his physical and mental development had he remained in Mother's care. The juvenile court's holding is further supported by the fact that Mother failed to complete her case plan services in the many months after S.M. was removed from her care. Mother was given ample opportunity to demonstrate her commitment to S.M. and her ability to properly care for S.M. during his formative years. Mother failed to demonstrate such a commitment.

{¶ 24} Mother also argues the juvenile court erred by granting permanent custody to WCCS since she was largely compliant with her case plan services. However, while it is certainly a relevant factor to consider whether Mother completed her case plan services, it is well-established that "the case plan is 'simply a means to a goal, but not the goal itself.'"[9] *In re E.B.*, 12th Dist. Warren No. CA2009-10-139, 2010-Ohio-1122, ¶ 30, quoting *In re C.C.*,

---

9. Despite Mother's argument to the contrary, when asked if Mother had completed any single case plan requirement, the ongoing case work testified "No." The ongoing case worker also testified Mother had not remedied the conditions that caused S.M. to be removed from her care.

187 Ohio App. 3d 365, 2010-Ohio-780, ¶ 25 (8th Dist.). "[T]he key concern is not whether the parent has successfully completed the case plan, but whether the parent has substantially remedied the concerns that caused the child's removal from the parent's custody." *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. Therefore, while Mother suggests otherwise, when the focus is on S.M.'s best interest, the juvenile court's decision to grant permanent custody of S.M. to WCCS was supported by sufficient credible evidence and was otherwise not against the manifest weight of the evidence.

{¶ 25} Mother further argues the juvenile court erred by granting permanent custody to WCCS due to her strong bond to S.M. However, considering Mother's limited contact with S.M. after he was removed from her care, we find Mother's claim that she was bonded to S.M. somewhat dubious. Regardless, even assuming Mother did have a strong bond with S.M., as this court has repeatedly stated, that is but one factor to be considered when determining the best interest of a child in a permanent custody proceeding. *See, e.g., In re A.T.-D.*, 12th Dist. Butler Nos. CA2015-03-059, CA2015-03-060, and CA2015-04-068, 2015-Ohio-2579, ¶ 30 (clear bond between father, grandmother, and child is but one factor to consider when determining the best interest of a child); *In re S.H.*, 12th Dist. Butler Nos. CA2014-12-259 and CA2015-01-008, 2015-Ohio-1763, ¶ 24 (strong bond between mother, grandmother, and child is but one factor to consider when determining best interest of a child); *In re I.B.*, 12th Dist. Butler No. CA2014-12-244, 2015-Ohio-1344, ¶ 20 (strong bond between mother and child is but one factor to consider when determining the best interest of a child). This is because "there is not one element that is given greater weight than the others." *In re D.R.*, 12th Dist. Butler No. CA2009-01-018, 2009-Ohio-2805, ¶ 14, citing *In re Schaefer*, 111 Ohio St. 3d 498, 2006-Ohio-5513, ¶ 56. Mother's claim otherwise lacks merit.

**Conclusion**

{¶ 26} The juvenile court, just like this court on appeal, must act in a manner that places S.M.'s best interest above all else. "'A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.'" *In re D.E.*, 12th Dist. Warren Nos. CA2012-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 60, quoting *In re Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, ¶ 61. The juvenile court's decision to grant permanent custody in this case does just that. This is because, as the juvenile court found, adoption is the best chance for S.M. to achieve the stable family home that he needs. We agree. Therefore, because we find no error in the juvenile court's decision to grant WCCS's motion for permanent custody, Mother's single assignment of error is without merit and overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.

- 13 -