[Cite as *In re T.H.*, 2019-Ohio-835.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF:          :

        T.H., et al.          :         CASE NO. CA2018-10-125

                                             CA2018-10-126

         :

         :         O P I N I O N

         :         3/11/2019

         :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 17-D000093 and 17-D000125

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Alexander, Wagner & Kinman, Jesse D. Bowman, 423 Reading Road, Mason, Ohio 45040, for appellant

**PIPER, J.**

{¶ 1} Appellant, A.H. ("Mother"), appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of her children to appellee, Warren County Children's Services ("the Agency").[1]

---

1. T.H.'s father is unknown. E.H.'s father, while known, could not be located. As such, neither child's father was involved in the proceedings below and neither is participating in this appeal.

{¶ 2}   Mother gave birth to two children, T.H. and E.H.  When the children were ten and nine years old, the Agency filed separate complaints alleging that the children were dependent.  The complaints alleged that the children's dependency was predicated upon one child's exposure to sexual abuse by an uncle while in her maternal grandfather's care, and Mother's drug usage while the other child was in her care.

{¶ 3}   After emergency hearings, the juvenile court granted temporary custody of the children to the Agency.  The children were later adjudicated dependent, and Mother was assigned a case plan by the Agency with specific goals.  These case plan goals included: drug and alcohol assessments, random drug screens, mental health assessments and a psychological evaluation.  Mother was also required to obtain housing and income, and to complete parenting classes.  Mother was also to refrain from engaging in criminal activity and cooperate with the Agency if reunification with the children was to occur.  Despite Mother's clear understanding of the case plan, she failed to complete the requirements.

{¶ 4}   The Agency moved for permanent custody of the children after Mother failed to make adequate progress on her case plan objectives.  The juvenile court held a hearing on the Agency's motion and granted permanent custody of the children to the Agency.  Mother now appeals the juvenile court's decision, raising the following assignment of error:

{¶ 5}   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN BECAUSE THIS FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6}   Mother argues in her assignment of error that the juvenile court erred by granting permanent custody of the children to the Agency.

{¶ 7}   Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and

convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11. An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. This court will not reverse a juvenile court's decision to grant permanent custody unless there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10.

{¶ 8} Even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19. When determining whether a juvenile court's decision is against the manifest weight of the evidence in a permanent custody case, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶ 9} The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 10} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Among others, these factors include the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child, the wishes of the child, the custodial history of the child, and the child's need for a legally secure permanent placement.

{¶ 11} Second, pursuant to R.C. 2151.414(B)(1)(a) thru (e), the juvenile court must find that one of five circumstances apply to the child, such as that the child has been abandoned, orphaned, or been in an agency's temporary custody for 12 months of a consecutive 22-month period.[2] *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12. "For purposes of [Chapter 2151], a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

2. The juvenile court also made a finding that the children could not be placed with Mother within a reasonable time, which is also a possible finding to be considered under the statute. While the juvenile court made a proper finding regarding this factor, the statute requires the finding of only one factor so that this court need not address the juvenile court's alternative finding.

{¶ 12} After reviewing the record, we find that the juvenile court's decision to grant permanent custody of the children to the Agency was not against the manifest weight of the evidence and was in the best interest of the children based on the factors addressed above.

{¶ 13} An Agency caseworker testified as to how the Agency became involved with Mother and the children. The caseworker testified that the Agency had knowledge of Mother's "sever[e] historical drug abuse issues, and, then also had knowledge that she did suffer from mental health issues." The Agency was also aware that Mother did not have stable housing or income. Based on these issues, the Agency designed a case plan to help Mother make strides toward reunification with the children. However, Mother failed to complete the required actions on the case plan, including a failure to complete a mental health assessment, parenting classes, and a psychological assessment. Nor had Mother obtained or maintained stable housing. Instead, the juvenile court considered that Mother was living with an unidentified person in a one-bedroom apartment and that her roommate was physically abusive, had drug problems, and was an alcoholic. Furthermore, Mother continued her drug use, and tested positive for drugs or refused screens despite her case plan requirement that she refrain from drug use. Mother also exposed herself to criminal activity in violation of the case plan.

{¶ 14} The caseworker also testified that Mother was granted supervised visitation with the children, but such was revoked because Mother continually missed her visits. As such, Mother had not visited the children in the 11 months prior to the hearing. Mother wrote the children "a couple times" but did not have any contact with the children in the 90 days before the Agency filed its motion for permanent custody of the children.

{¶ 15} Mother also testified at the hearing and admitted that she did not "get serious" about her drug problem until *after* the Agency filed its motion for permanent custody. Before

then, for example, Mother had only completed three days of an inpatient drug rehabilitation program before she left the program against medical advice. Mother did not deny her failure to complete case plan requirements including her mental health assessment, psychological evaluation, or parenting classes. During her testimony, Mother admitted to using drugs, including cocaine, marijuana, and methamphetamines, and also acknowledged her heroin use for the past 17 years. Mother further testified that her prolonged drug abuse caused her to suffer congestive heart failure and five related surgeries.

{¶ 16} Mother admitted during her testimony that her current housing situation is not conducive to her children living with her, and further confirmed that she did not have any income. Although Mother applied for social security disability benefits, her application was last denied for failure to appear. Mother admitted that, at the time of the hearing, she was not able to "be there" for the children and further admitted that her drug use had resulted in the first child being in her grandfather's care where the child was subjected to sexual abuse. Most recent to the hearing, Mother was also convicted for felony drug charges, and was awaiting sentencing on her conviction.

{¶ 17} The children's GAL submitted a report to the juvenile court recommending that the Agency be granted permanent custody of the children. The juvenile court also considered how the children have been doing in foster care since the Agency was awarded custody. The court heard evidence that the children are doing well in their placement and are engaged in counseling. The caseworker testified that the children "enjoy" their foster home and are "doing better" in school since the time of their placement with the Agency.

{¶ 18} This evidence clearly establishes that Mother, as well as both children's fathers, have abandoned the children, as none have had any contact with the children for more than 90 days. Moreover, the evidence demonstrates that granting permanent custody to the

Agency is within the children's best interest, especially since permanent placement is their best opportunity to be adopted and obtain stability in their lives.

{¶ 19} Mother asserts that reunification with her children is still possible if given an opportunity to work her case plan. We acknowledge that Mother began some of her case plan services once the Agency filed for permanent custody. However, Mother has consistently failed to follow through in the past. Instead, Mother offered excuses to explain why she was not able to complete case plan objectives, such as not having adequate transportation or an income. However, not having certain resources did not stop Mother from reaching out to the children through more than "a couple" of letters or stop her from having clean drug screens. Mother's history demonstrates her voluntary choices to disregard the means made available to her by the Agency to help her achieve her case plan goals and work toward reunification. Mother's recent attempt to do so, however, provides no assurance that she will follow through and achieve a stable and safe environment for the children.

{¶ 20} Rather, Mother's argument requires this court to speculate whether she can complete any appreciable steps towards completing her case plan or remain free from drug usage. The juvenile court, and this court on appeal, must rely on the documented history and the children's current condition and environment rather than anticipate future developments when addressing the children's best interests. *In re B.C.*, 12th Dist. Warren Nos. CA2018-03-024 and CA2018-03-027, 2018-Ohio-2673. "The law does not require the court to experiment with a child's welfare to see if the child will suffer great detriment or harm." *Id.* at ¶ 30.

{¶ 21} After reviewing the record, we find that the juvenile court did not err in granting permanent custody of the children to the Agency. As such, Mother's single assignment of error is overruled.

{¶ **22**} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.