[Cite as *In re D.R.*, 2020-Ohio-4025.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF:<br><br>D.R. & T.R. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J.<br><br>Case Nos. 2020 CA 00024 &<br>2020 CA 00025<br><br>O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2018-0032, F2018-0033 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 6, 2020 |
| APPEARANCES: | |

| For Appellee LCJFS | For Appellant John Robinson, Jr. |
|---|---|
| WILLIAM C. HAYES<br>Licking County Prosecutor | JERMAINE COLQUITT<br>33 W. Main Street, Suite #109<br>Newark, Ohio 43055 |
| PAULA M. SAWYERS<br>Assistant Prosecuting Attorney<br>20 S. Second Street, Fourth Floor<br>Newark, Ohio 43055 | Mother, Pro Se<br><br>MONICA MATTOX<br>92 ½ Penny Avenue<br>Newark, Ohio 43055 |
| Guardian Ad Litem | |
| JOHN OBORA<br>29 South Park Place<br>Newark, Ohio 43055 | For Appellee LCJFS<br><br>PAULA M. SAWYERS<br>20 South Second Street, 4th Floor<br>Newark, Ohio 43055 |

*Hoffman, P.J.*

{¶1}   In Licking App. Nos. 2020 CA 0024 and 2020 CA 0025, appellant John Robinson, Jr. ("Father") appeals the February 5, 2020 Judgment Entries entered by the Licking County Court of Common Pleas, Juvenile Division, which overruled his objections to the magistrate's September 27, 2019 decision, recommending his parental rights with respect to his two minor children ("Child 1" and "Child 2", individually; "the Children", collectively) be terminated; approved the magistrate's decision as order of the court; and granted permanent custody of the Children to appellee Licking County Job and Family Services ("LCJFS").

STATEMENT OF THE FACTS AND CASE

{¶2}   Monica Mattox ("Mother") and Father are the biological parents of Child 1 and Child 2.  The trial court issued an emergency ex parte order of removal of the Children on January 11, 2018.  On July 12, 2018, LCJFS filed complaints, alleging Child 1 and Child 2, who was a newborn, were dependent.

{¶3}   The complaints asserted Mother did not have suitable or stable housing, had a prior history with Franklin County Children Services and lost custody of three other children, engaged in drug seeking behaviors, and admitted taking Percocet, Vicodin, and Morphine when she was 13 weeks pregnant with Child 2.  In addition, Mother had a history of mental health issues, including an explosive temper.  Mother also had a pending felony non-support case in Franklin County Court of Common Pleas.  LCJFS social worker Trudy Gabbard attempted to see Mother on January 11, 2018, at the address she provided to hospital staff upon the birth of Child 2.  Mother refused to allow the social worker into the home.  Although Gabbard could smell a foul odor coming from the apartment, but she could not otherwise assess the condition of the residence.  Mother also refused to allow

Gabbard to see Child 1.  When the social worker finally made contact with Child 1, she observed Child 1 to be dirty and had an unpleasant odor.

{¶4}  Father, who resided with Mother, also refused to cooperate with Gabbard. Father was previously diagnosed with schizophrenia.  He left his condition untreated. Mother was currently married to Roger Collier, who was serving several years on a felonious assault conviction.  Mother reported Collier was not the father of the Children.

{¶5}  Following an emergency shelter care hearing on January 12, 2018, the trial court placed the Children in the temporary custody of LCJFS. The trial court ordered Mother, Father, and Collier to cooperate with genetic testing to determine the paternity of the Children.  The trial court appointed Attorney John Obora as guardian ad litem for the Children.

{¶6}  LCJFS filed motions for random drug screening and breathalyzer testing, and drug and/or alcohol evaluations and/or treatment.  The trial court ordered Mother and Father to undergo evaluations and attend counseling at the Licking County Alcoholism Prevention Program or other approved drug and/or alcohol treatment program, and submit to random drug screening and breathalyzer testing.

{¶7}  The genetic testing indicated a 0% probability of Collier being the biological father of either Child 1 or Child 2, and a 99.99% probability of Father being the biological father of both Child 1 and Child 2.  On March 5, 2018, the trial court conducted an uncontested adjudicatory and dispositional hearing, found the Children to be dependent, and ordered the Children into the temporary custody of LCJFS.  Via Magistrate's Decision filed March 6, 2018, Collier was dismissed as a party to the proceedings.

{¶8} LCJFS filed a motion for permanent custody on December 10, 2018. The matter proceeded to hearing before the magistrate on May 10, 2019. Attorney Obora filed his Guardian ad Litem report on May 3, 2019, recommending permanent custody of the Children be granted to LCJFS due to a significant lack of progress by Father and Mother on the issues which originally led to the removal of the Children.

{¶9} Veronica Harter, the ongoing social worker assigned to the family, testified the case was opened after Mother gave birth to Child 2 and LCJFS learned Mother had tested positive for morphine, Percocet, and Vicodin at a prenatal visit. The trial court granted an ex parte order of removal. Mother and Father left the hospital without Child 2. When LCJFS arrived at their residence to remove Child 1, Father was attempting to sneak Child 1 out of the house in a garbage bag.

{¶10} Harter visited Mother and Father's residence on July 30, 2018, and May 7, 2019. Mother and Father had multiple cats and dogs. The home smelled of ammonia. Harter was not permitted to inspect Mother and Father's bedroom. The bedroom designated for the Children was unfurnished. Harter did not observe any clothing for the Children. Harter attempted to conduct home visits two or three times a month between August, 2018, and April, 2019, but was generally unsuccessful. When Harter was able to schedule visits, Mother would call and cancel the appointments, explaining she and Father were too busy to attend.

{¶11} Father's case plan required him to complete a psychological evaluation and follow all recommendations; take all medications as prescribed; sign all requested releases of information; be available for announced and unannounced home visits;

maintain safe, stable, and independent housing; and complete a parent education course and demonstrate the skills he learned therefrom.

{¶12} Father's sole source of income is social security disability for schizophrenia and bipolar disorder. Father was not receiving treatment for either condition. Father did completed a psychological evaluation. The evaluator did not find Father very truthful during the evaluation. Father evidenced significant deficits in his understanding of the basic care of the Children. Based upon the results, it was recommended Father undergo mental health counseling, but he did not comply. Father attended parenting classes through Heartbeats. However, LCJFS did not find the Heartbeats program sufficient based upon their concerns related to Father. Father last visited the Children on January 4, 2019. Father and Mother repeatedly cancelled visits at the last minute. Father and Mother were instructed to call four hours prior to the visit if they had to cancel, but they did not comply and LCJFS stopped the visits. Father did not attempt to contact the Children after January 4, 2019.

{¶13} Child 1 has special needs and attends Head Start five days/week. He has an individualized education program ("IEP") to address his speech delays. Since LCJFS's involvement, Child 1's vocabulary has increased from 5 words to 50-60 words, and he is better able to communicate his needs. Mother initially refused to sign the IEP. Mother and Father reported they did not want Child 1 to have any services until he reached kindergarten. Child 2 has some developmental delays and is engaged in Early Head Start and Help Me Grow. Child 2, who was approximately 1 ½ at the time of the hearing, was not walking and did not say any words. He did not shake his head "yes" or "no", and did not look at the person talking to him. The Children are together in the same foster

home and have been in the home since their removal.  The foster parents are interested in adopting both Child 1 and Child 2.  Neither Mother nor Father had provided LCJFS with any relatives as possible placement.

**{¶14}** Father testified he and Mother had to cancel home visit appointments with Harter due to family problems, specifically, sickness in the family.  Father stated he and Mother have four cats and two dogs in their home.  He claimed there was furniture in the Children's room and there was clothing for the Children.  Father acknowledged he and Mother had not visited the Children since January 4, 2019, but maintained it was because "Veronica [Harter] took our visits."  Father explained they were inconsistent with visits because he and Mother were sick and did not want to get the Children sick.  Father insisted he and Mother called within the time frame required when they cancelled visits.

**{¶15}** Father noted he completed a psychological assessment, but denied being informed about the recommendation he follow up with counseling.  Father indicated he did not take any medication for his schizophrenia or bipolar disorder, and did not attend counseling for those conditions.  Father revealed he experiences auditory and visual hallucinations, which he suggested could be real.  Father did not complete a substance abuse assessment.

**{¶16}** Via decision filed September 27, 2019, the magistrate recommended Father and Mother's parental rights be terminated and permanent custody be granted to LCJFS. The magistrate found Father and Mother continued and repeatedly failed to remedy the concerns which led to the Children's removal.  The magistrate further found it was in the best interest of the Children to grant permanent custody to LCJFS. Father filed objections to the magistrate's decision on October 7, 2019.  The trial court overruled Father's

objections, and approved and adopted the magistrate's decision via Judgment Entry filed February 5, 2020.

**{¶17}** It is from this judgment entry Father appeals, raising the following identical assignments of error in Licking App. No. 2020 CA 0024 and Licking App. No. 2020 CA 0025:

I. THE TRIAL COURT WAS WITHOUT JURISDICTION TO ISSUE ITS FEBRUARY 9TH, 2020, JUDGMENT ENTRY GRANTING PERMANENT CUSTODY BECAUSE THE STATE DID NOT SERVE THE LEGAL FATHER, ROGER COLLIER, II, WITH ANY DOCUMENT SUBSEQUENT TO THE COMPLAINT AND THE TRIAL COURT DISMISSED HIM AS A PARTY ON MARCH 6TH, 2018.

II. THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.  THE STATE DID NOT PROVE THAT THE CHILD CANNOT OR SHOULD NOT BE PLACED WITH A PARENT WITHIN A REASONABLE TIME AND DID NOT PROVE THAT GRANTING PERMANENT CUSTODY IS IN THE CHILD'S BEST INTEREST.

III. LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES FAILED TO MAKE REASONABLE EFFORTS TO REUNIFY THE PARENTS WITH FAMILY BECAUSE THEY DID NOT ACCOUNT FOR APPELLANT'S MENTAL HEALTH DIAGNOSIS IN FORMULATING A

CASE PLANE, MADE NO ATTEMPT TO REUNIFY WITH LEGAL FATHER, AND FAILED TO INVESTIGATE RELATIVE PLACEMENT.

**{¶18}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶19}** In his first assignment of error, Father contends the trial court did not have jurisdiction to grant permanent custody of the Children to LCJFS as LCJFS failed to serve Roger Collier, the legal father, with the motion for permanent custody.  We disagree.

**{¶20}** After a motion for permanent custody has been filed, the trial court is to "schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem." R.C. 2151.414(A)(1).

**{¶21}** R.C. 2151.29 reads, in its relevant part:

Service of summons, notices, and subpoenas * * * shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail.

**{¶22}** The notice requirement of R.C. 2151.414(A) ensures the juvenile court has personal jurisdiction over the parents. *In re Kincaid*, 4th Dist. No. 00CA3, 2000 WL

1683456, *4 (Oct. 27, 2000). Unlike subject matter jurisdiction, the issue of personal jurisdiction is forfeited without timely objection. *In re J.P.*, 9th Dist. No. 23937, 2008-Ohio-2157, ¶ 7. Whether a parent was properly served raises an issue of personal, rather than subject matter, jurisdiction. *In re M.M.*, 8th Dist. No. 79947, 2002 WL 207610, *5 (Feb. 7, 2002). Ordinarily, such an issue would be personal to that parent, and another parent may not raise it. *Id.*

**{¶23}** "It is well established in Ohio that an appeal lies only on behalf of a party aggrieved. Such party must be able to show that he has a present interest in the subject matter of the litigation and that he has been prejudiced by the judgment of the lower court." *In re: Love*, 19 Ohio St.2d 111, 249 N.E.2d 794 (1969). "One may not challenge an alleged error committed against a non-appealing party absent a showing that the challenger has been prejudiced by the alleged error." *In re D.H.*, 8th Dist. No. 82533, 2003-Ohio-6478, ¶ 7 (Citations omitted).

**{¶24}** As such, Father may challenge an alleged service error regarding Collier only if he can demonstrate he himself has been prejudiced by the alleged error. See, *Matter of G.C.J.*, 11th Dist. Portage Nos. 2018-P-0071, 2018-P-0072, 2018-P-0074, and 2018-P-0075, 2019-Ohio-185, ¶ 33. Unless Father is able to demonstrate he was "actually prejudiced", the mere assertion Collier "was not properly served is an insufficient basis upon which to award standing to [Father] to raise such error." *In re A.M.*, 2012-Ohio-1024, at ¶ 18, citing *In re L.A.*, 9th Dist. Summit No. 21531, 2003-Ohio-4790, ¶ 56.

**{¶25}** If Father believed Collier's receipt of proper notice "was necessary to avoid prejudice to [Father's own] parental rights, [Father] could have proffered [his] position at the hearing." See, *Matter of G.C.J.*, ¶ 34. Father failed to do so. Further, Father has

failed to demonstrate to this Court how he was prejudiced by LCJFS's failure to serve Collier with the motion for permanent custody.  See, *In re Villa*, 3d Dist. Marion No. 9-01-21, 2001 WL 1300763, *3 (Oct. 26, 2001). Accordingly, we find Father does not have standing to challenge whether Collier received proper notice. *Id.*

**{¶26}** We also find Father has waived any error as a result LCJFS's failure to serve Collier.  The magistrate dismissed Collier via order filed March 5, 2018.  Father did not file objections to the order.  Having failed to properly object to the magistrate's March 5, 2018 order in accordance with Civ.R. 53(D)(3), Father has waived the right to assign those issues as error on appeal.  The trial court approved and adopted the magistrate's order via judgment entry filed March 6, 2018.  Father did not appeal that judgment; therefore, is barred from raising this argument herein.

**{¶27}**  Father's first assignment of error is overruled.

II, III

**{¶28}** We elect to address Father's second and third assignments of error together.  In his second assignment of error, Father maintains the trial court's decision granting permanent custody of the Children to LCJFS was not supported by clear and convincing evidence because LCJFS not only failed to prove the Children could not be placed with him within a reasonable time or should not be placed with him, but also failed to prove it was in the Children's best interest to terminate his parental rights.  In his third assignment of error, Father asserts LCJFS failed to make reasonable efforts to reunify the family as LCJFS did not consider Father's mental health diagnosis in formulating his case plan, made no attempt to reunify the Children with Roger Collier, and failed to investigate relative placement.  We disagree.

**{¶29}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶30}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶31}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for

twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶32}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶33}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶34}** As set forth in our statement of the facts and case, supra, Father failed to complete his case plan services. Father completed his psychological assessment. Based upon the results, it was recommended Father undergo mental health counseling, but he did not comply. Father claimed he was never informed of the recommendation. Father did not take any medication for his schizophrenia or bipolar disorder, and did not attend counseling for those conditions. Father revealed he experiences auditory and visual hallucinations, which he suggested could be real. Father did not complete a substance abuse assessment. Father prevented Veronica Harter from inspecting the home on a regular basis. Harter conducted only two home visits as Father and Mother repeatedly

cancelled appointments.  During her visit, Harter found no furniture or clothing for the Children.  Harter noted there were at least 6 animals living in the home and the home had a strong odor of ammonia.

**{¶35}** Father attended parenting classes through Heartbeats.  However, LCJFS did not find the Heartbeats program sufficient based upon their concerns related to Father.  Father last visited the Children on January 4, 2019.  Father and Mother repeatedly cancelled visits at the last minute.  Father and Mother were instructed to call four hours prior to the visit if they had to cancel, but they did not comply and LCJFS stopped the visits. Father did not attempt to contact the Children after January 4, 2019.

**{¶36}** The Children are together in the same foster home and have been in the home since their removal from Father and Mother's home. They have some developmental delays for which they are receiving the appropriate services.  The Children are bonded to each other and to their foster parents.  The foster parents wish to adopt the Children.

**{¶37}** Harter made Father aware of the results of his psychological evaluation and provided information as to where to Father was referred for mental health services, despite his claim he was not informed of such. Although asked, neither Father nor Mother provided LCJFS with the names of any relatives for potential placement.  No relatives contacted LCJFS requesting placement or custody of the Children.  Roger Collier was not the biological father of the Children; therefore, was dismissed as a party.  LCJFS was not required to pursue reunification.

**{¶38}** Based upon the foregoing, we find the trial court's decision to grant permanent custody of the Children to LCJFS was supported by clear and convincing

evidence as LCJFS proved the Children could not be placed with Father within a reasonable period of time or should not be placed with him and it was in the best interest of the children to grant permanent custody to LCJFS. We further find LCJFS made reasonable efforts to reunify the family.

{¶39} Father's second and third assignments of error are overruled.

{¶40} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Delaney, J. and

Wise, Earle, J. concur