[Cite as *In re R.D.*, 2021-Ohio-3780.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|                        |   |                                          |
|------------------------|---|------------------------------------------|
| IN RE:                 | : |                                          |
| R.D., et al.           | : | CASE NOS.  CA2021-05-017                  |
|                        |   | CA2021-05-018                            |
|                        | : |                                          |
|                        |   | O P I N I O N                            |
|                        | : | 10/25/2021                               |
|                        | : |                                          |
|                        | : |                                          |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 2018JC05107; 2018JC05108

Denise S. Barone, for appellant.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Matthew V. Faris, for Father.

Andrew J. Helmes, guardian ad litem.

**S. POWELL, P.J.**

{¶ 1}  Appellant ("Mother") appeals the decision of the Clermont Court of Common

Pleas, Juvenile Division, granting permanent custody of two of her children, R.D. and S.D.,

to appellee, Clermont County Department of Job and Family Services ("CCDJFS"). For the reasons outlined below, we affirm the juvenile court's decision.

**The Parties**

{¶ 2} Mother is the biological mother of the two children at issue in this case, R.D., born on July 24, 2006, and S.D., born on July 25, 2008. R.D.'s and S.D.'s biological father ("Father") did not appeal the juvenile court's decision granting permanent custody to CCDJFS and is not a party to this appeal.

**Facts and Procedural History**

{¶ 3} On August 31, 2018, CCDJFS filed separate complaints alleging R.D. and S.D. were neglected children. In support of its complaints, CCDJFS alleged that it had received a report on July 6, 2018 claiming Father's home where R.D. and S.D. lived lacked "adequate food, running water, and electricity for the family" and that Father was using "illegal substances, specifically Meth." CCDJFS also alleged that a subsequent investigation into this report revealed that Father's home was without electricity, but that the home did "currently have running water." CCDJFS further alleged that this investigation revealed that Father "was accessing community resources to supply the family with food" and that Father had tested positive for methamphetamine and amphetamine. CCDJFS additionally alleged, in pertinent part, the following:

> An out of home safety plan was put into place on 7/17/18. Since 7/17/18, [t]hree safety plans have been attempted with the family but have all disrupted. There are no other safety plan options at this time. The agency attempted to complete a safety plan with the children's biological mother, [Mother], but was unsuccessful due to her being dishonest about who was residing in her home.

{¶ 4} After receiving CCDJFS' complaint, the juvenile court granted CCDJFS emergency temporary custody of R.D. and S.D. The juvenile court also appointed a guardian ad litem for R.D. and S.D.

{¶ 5} On October 2, 2018, the juvenile court adjudicated R.D. and S.D. as neglected children. This adjudication was based on Mother's and Father's admission that R.D. and S.D. were, in fact, neglected. Two weeks later, on October 26, 2018, the juvenile court issued a dispositional decision granting temporary custody of R.D. and S.D. to CCDJFS. The record indicates that this decision was based on Mother's and Father's agreement that CCDJFS should, at that time, receive temporary custody of their children. Mother did not appeal from the juvenile court's adjudicatory decision finding R.D. and S.D. neglected children nor did Mother appeal the juvenile court's decision granting temporary custody to CCDJFS.

{¶ 6} On October 29, 2019 and again on February 25, 2020, the juvenile court extended CCDJFS' temporary custody of R.D. and S.D. Then, on July 27, 2020, CCDJFS moved for permanent custody of R.D. and S.D. To support its motions for permanent custody, CCDJFS alleged that both R.D. and S.D. had been in its temporary custody for 12 or more months of a consecutive 22-month period. CCDJFS also alleged that R.D. and S.D. could not or should not be placed with either Mother or Father within a reasonable time. CCDJFS further alleged that R.D.'s and S.D.'s best interests would be served by an award of permanent custody to CCDJFS.

{¶ 7} On October 16, 2020, a joint hearing on CCDJFS' motions for permanent custody was held before a juvenile court magistrate. During this hearing, the magistrate heard testimony from a total of seven witnesses. This included testimony from both Mother and Father. The magistrate also heard testimony from the current CCDJFS caseworker assigned to R.D.'s and S.D.'s cases, as well as R.D.'s and S.D.'s guardian ad litem.

{¶ 8} As part of this testimony, it was revealed that S.D. was at that time hospitalized at an inpatient crisis stabilization unit receiving treatment for a variety of severe mental health issues, including self-harming behaviors like cutting and head-banging. The

record indicates that S.D.'s mental health issues stemmed from the trauma caused by the physical and sexual abuse perpetrated on her by one of her older brothers, L.D.[1]  The testimony also revealed that R.D. was likewise receiving treatment at a nearby residential treatment facility for his own mental health issues stemming from that same physical and sexual abuse L.D. had inflicted upon S.D.  This includes R.D. receiving treatment for diagnosed post-traumatic stress disorder and disruptive mood dysregulation disorder.

{¶ 9}   The testimony further revealed that S.D.'s older brother, L.D., the same older brother who had physically and sexually abused S.D., was at that time residing in Mother's home.  The record indicates that this was the same home where R.D. and S.D. would also be living if they were placed into Mother's care.  The testimony additionally revealed that Mother's paramour, the father of Mother's youngest child, J., was also residing at Mother's home when he was not otherwise staying with friends.  This was in addition to the testimony indicating Mother's paramour has anger management issues, as well as Mother's paramour having a prior felony drug conviction.

{¶ 10} On November 30, 2020, the magistrate issued two separate decisions granting permanent custody of R.D. and S.D. to CCDJFS.  The following week, on December 4, 2020, Mother filed objections to the magistrate's decisions.  Mother then supplemented her objections on January 19, 2021.  Mother's objections included claims that the magistrate's decisions granting permanent custody of R.D. and S.D. to CCDJFS were not in R.D.'s and S.D.'s best interests.  Mother also argued the magistrate's decisions granting permanent custody to CCDJFS were against the manifest weight of the evidence.

{¶ 11} On January 19, 2021, the juvenile court held a hearing on Mother's objections.

---

1. The record indicates L.D. spent approximately 12-to-18 months at a residential treatment facility where he received sexual abuse and mental health counseling after he was adjudicated a delinquent child for committing an act that if charged as an adult would constitute a fourth-degree felony aggravated assault on the victim, S.D.

Following this hearing, on April 21, 2021, the juvenile court issued two separate decisions overruling Mother's objections in their entirety. In so holding, the juvenile court found the testimony offered by CCDJFS' witnesses in support of its motions for permanent custody was credible. This included the testimony elicited from the current CCDJFS caseworker assigned to R.D.'s and S.D.'s cases, as well as R.D.'s and S.D.'s guardian ad litem. The juvenile court also found that there was "substantial credible evidence" that was both "clear" and "convincing" that it was in R.D.'s and S.D.'s best interest to grant permanent custody to CCDJFS rather than return the children to either Mother's or Father's care.

## Appeal

{¶ 12} Mother now appeals the juvenile court's decisions granting permanent custody of R.D. and S.D. to CCDJFS. To support her appeal, Mother raises four assignments of error for review. For ease of discussion, Mother's second and third assignments of error will be addressed together.

## Permanent Custody Standard of Review

{¶ 13} Before a mother's constitutionally protected liberty interest in the care and custody of her children may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Because the state is required to prove the statutory standards for permanent custody have been met by clear and convincing evidence, "[a]n appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re D.P.*, 12th Dist. Butler No. CA2020-07-074, 2020-Ohio-6663, ¶ 13, citing *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6; and *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-

071, CA2019-05-072, and CA2019-05-073, 2019-Ohio-4127, ¶ 19. "This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented." *In re L.S.,* 12th Dist. Brown Nos. CA2019-03-001 and CA2019-03-002, 2019-Ohio-3143, ¶ 17, citing *In re K.A.,* 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. "However, even if the juvenile court's decision is supported by sufficient evidence, 'an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence.'" *In re C.S.,* 12th Dist. Clinton No. CA2020-04-006, 2020-Ohio-4414, ¶ 15, quoting *In re T.P.,* 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 14} In determining whether a juvenile court's decision to grant a motion for permanent custody is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.,* 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.,* 12th Dist. Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 15, citing *In re C.Y.,* 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25, citing *Eastley* at ¶ 21. "We are especially mindful of this in permanent custody cases." *In re M.G.,* 12th Dist. Warren No. CA2020-10-070, 2021-Ohio-1000, ¶ 26, citing *In re C.D.,* 12th Dist. Clermont No. CA2019-02-014, 2019-Ohio-4911, ¶ 13 ("[t]he presumption in weighing the evidence is in favor of the finder of fact, which we

are especially mindful of in custody cases").

**Assignment of Error No. 1:**

{¶ 15} THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY PROCEEDING TO A PERMANENT CUSTODY TRIAL WHEN THE MOTHER HAD NOT BEEN PROPERLY SERVED WITH A COPY OF THE STATE'S MOTION FOR PERMANENT CUSTODY.

{¶ 16} In her first assignment of error, Mother argues the juvenile court magistrate erred by proceeding with the permanent custody hearing even though she was not properly served with a copy of CCDJFS' motions for permanent custody until the day the permanent custody hearing was held, October 16, 2020. Mother supports this argument by claiming this "cannot possibly be deemed good service" and that it represents a clear violation of R.C. 2151.414(A)(1). We find no merit to Mother's claims.

{¶ 17} Pursuant to R.C. 2151.414(A)(1), upon the filing of a motion for permanent custody, "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem." The notice requirement found in R.C. 2151.414(A)(1) "ensures the juvenile court has personal jurisdiction over the parents." *In re D.R.*, 5th Dist. Licking Nos. 2020 CA 00024 and 2020 CA 00025, 2020-Ohio-4025, ¶ 22, citing *In re Kincaid*, 4th Dist. Lawrence No. 00CA3, 2000 Ohio App. LEXIS 5132, *10 (Oct. 27, 2000). Whether a parent was properly served as required by R.C. 2151.414(A)(1), "raises an issue of personal, rather than subject matter jurisdiction." *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 13. Personal jurisdiction over a party may be obtained through several different ways. This includes "through proper service of process" and "by the voluntary appearance of the party * * *." *In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 43, citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984).

"'An objection to personal jurisdiction is waived by a party's failure to assert a challenge to such jurisdiction at [his or her] first appearance in the case.'" *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 32, quoting *In re A.L.W.*, 11th Dist. Portage Nos. 2011-P-0050 thru 2011-P-0052, 2012-Ohio-1458, ¶ 37.

{¶ 18} Despite Mother's claims, the record indicates that Mother was properly served with a copy of CCDJFS' motions for permanent custody in accordance with R.C. 2151.414(A)(1) prior to when the permanent custody hearing was held. This includes service of CCDJFS' motions for permanent custody on Mother by both regular and certified mail, as well as by personal service on Mother directly. For Mother to now claim that she was not properly served with copies of CCDJFS' motions for permanent custody until the day the permanent custody hearing was held is simply not true. However, even if we were to assume Mother was correct in her assertion that she was not properly served, which she is not, the record nevertheless establishes that Mother, accompanied by her counsel, appeared before the magistrate for the permanent custody hearing and fully participated in the permanent custody hearing regarding both of her children at issue, R.D. and S.D. This includes Mother testifying at the permanent custody hearing as part of her own case-in-chief.

{¶ 19} The record also establishes that Mother never objected to the magistrate going ahead with the permanent custody hearing due to any alleged violation of the notice requirement found in R.C. 2151.414(A)(1) either before, during, or after the permanent custody hearing was held. Under these circumstances, and when considering Mother does not argue that she suffered any resulting prejudice, we find no error in the magistrate's decision to proceed with permanent custody hearing as scheduled. This is because, as noted above, Mother waived any challenge to the juvenile court's personal jurisdiction over her by appearing at, and fully participating in, the permanent custody hearing. *See, e.g., In*

*re G.D.*, 9th Dist. Summit No. 27855, 2015-Ohio-4669, ¶ 19 (appellant waived any challenge to the juvenile court's personal jurisdiction in a permanent custody proceeding where appellant "did not object to service, appeared at the permanent custody hearing, and fully participated in the hearing"); *see also In re P.O.*, 11th Dist. Geauga No. 2015-G-0028, 2015-Ohio-4774, ¶ 23 (by failing to challenge a juvenile court's jurisdiction over appellant's person in a permanent custody proceeding appellant "forfeited any such challenge on appeal"). Accordingly, because we find no error in the juvenile court magistrate's decision to proceed with the permanent custody hearing as scheduled, Mother's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 20} THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY FAILING TO GRANT HER REQUEST TO HAVE THE CHILDREN RETURNED TO HER CARE.

**Assignment of Error No. 3:**

{¶ 21} THE TRIAL COURT ERRED AS A MATTER OF LAW BY AWARDING PERMANENT CUSTODY OF THE CHILDREN TO CLERMONT COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES.

{¶ 22} In her second and third assignments of error, Mother argues the juvenile court erred by granting CCDJFS permanent custody of R.D. and S.D. rather than returning R.D. and S.D. to her care. We disagree.

{¶ 23} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. The juvenile court must first find the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors set forth in R.C.

2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. The juvenile court must then find any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10, citing R.C. 2151.414(B)(1)(a) to (e). Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 24} Mother does not dispute the juvenile court's decisions finding R.D. and S.D. had been in the temporary custody of CCDJFS for at least 12 months of a consecutive 22-month period prior to when CCDJFS filed its two motions for permanent custody. The only issue, therefore, is whether the juvenile court erred by finding it was in R.D.'s and S.D.'s best interest to grant permanent custody to CCDJFS.

{¶ 25} When considering the best interest of a child in a permanent custody case, such as the case here, the juvenile court is required under R.C. 2151.414(D)(1) to consider certain enumerated factors. *In re D.E.*, 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 32. Pursuant to R.C. 2151.414(D)(1)(a) thru (e), these factors include, but are not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial

history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) thru (11) apply in relation to the parents and child. *In re J.C.,* 12th Dist. Brown No. CA2017-11-015, 2018-Ohio-1687, ¶ 22. "The juvenile court may also consider any other factors it deems relevant to the child's best interest." *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24. No one factor is given greater weight than the others. *In re S.H.*, 12th Dist. Butler Nos. CA2020-02-023 and CA2020-02-024, 2020-Ohio-3499, ¶ 30, citing *In re G.W.*, 12th Dist. Butler No. CA2019-01-003, 2019-Ohio-1586, ¶ 49. "Nor is any one factor dispositive." *In re M.G.*, 12th Dist. Warren No. CA2020-10-070, 2021-Ohio-1000, ¶ 29, citing *In re Bailey*, 11th Dist. Geauga No. 2001-G-2337, 2001 Ohio App. LEXIS 3294, *17 (July 20, 2001).

{¶ 26} Within its two separate decisions regarding R.D. and S.D., the juvenile court made numerous factual findings as it relates to the relevant best interest factors set forth above. For instance, with respect to R.D.'s and S.D.'s interactions and interrelationships with those who may significantly affect their lives, the juvenile court found that both R.D. and S.D. were bonded with Mother, as was Mother bonded with R.D. and S.D. The juvenile court also found that R.D. believes that he and S.D. need to "stick together due to their strong ties" as brother and sister. The juvenile court further found that R.D.'s and S.D.'s maternal grandparents expressed a willingness to provide a home for R.D. and S.D., but that R.D.'s and S.D.'s maternal grandparents home study failed "due to their self-reported use of marijuana." The juvenile court additionally found that neither R.D. nor S.D. developed any attachments while in foster care or their respective residential treatment facilities.

{¶ 27} Next, in regard to R.D.'s and S.D.'s wishes, the juvenile court found that both

R.D. and S.D. had expressed their desire to return to Mother's and Father's care, with R.D.'s preferred choice being Father and S.D.'s preferred choice being Mother. The juvenile court also found that both R.D. and S.D. would rather be placed with their maternal grandparents instead of being adopted or returned to foster care if they could not be reunited with Mother and Father. The juvenile court further found that R.D.'s and S.D.'s guardian ad litem had recommended that permanent custody be granted to CCDJFS. As stated in the guardian ad litem's report and recommendation, this is because:

> The only circumstance in which this GAL could foresee the children being safely placed with Mother is if the older sibling [L.D.] was out of her home. While Mother did indicate that he will be turning eighteen in December, he will not finish high school until 2021. It seems unlikely that he would be able to achieve independent living prior to completion of high school.

{¶ 28} The guardian ad litem also stated:

> This GAL's concerns with the children being exposed to the older sibling is not just a threat of physical harm – they both have been working through significant mental trauma and still appear to have a long way to go to process, understand, and cope with all they have been through to date. Nothing that could jeopardize that progress they have been able to make to this point can be seen as in their best interest. It is not clear when, or if, they can safely be placed in the presence of their older sibling again.

{¶ 29} Additionally, as it relates to R.D.'s and S.D.'s custodial history, the juvenile court found R.D. and S.D. had been in the temporary custody of CCDJFS for at least 12 months of a consecutive 22-month period. The juvenile court found that during this time R.D. and S.D. had been placed in ten different settings since the family first had contact with CCDJFS. The juvenile court noted that this included several different foster homes and residential treatment facilities.

{¶ 30} Next, with respect to R.D.'s and S.D.'s need for a legally secure permanent placement, the juvenile court determined that this could only be achieved with a grant of

permanent custody to CCDJFS.  In so finding, the juvenile court initially stated in regard to Mother:

> The [children's] mother has independent housing, but the existing occupants make it unrealistic for the [children] to return to [their] mother's household.  The mother rents a three-bedroom house.  The occupants and frequent overnight guests in her home include the parents' oldest son [L.D.], who sexually abused S.D.; [L.D.'s girlfriend]; [J.], the mother's three-year-old daughter, and [B.C.], mother's boyfriend and father of [J.]

{¶ 31} The juvenile court then stated that it had found R.D. was "unsure of how he would feel being placed back in a home with his oldest brother [L.D.]," whereas "[d]ealing with all these individuals would undoubtedly be a struggle for S.D."  The juvenile court also stated that Mother had "attempted to assure" the juvenile court that she could provide for the "safety of all her children if R.D. and S.D. were placed back in her home" given her confidence that L.D. was "unlikely to reoffend."  The juvenile court, however, found Mother's attitude "appears to minimize the psychological effect it may have on R.D. and S.D." to be placed back in the same home as L.D.  This is because, as the juvenile court noted, R.D.'s and S.D.'s "mental health needs to be taken as seriously as their physical safety."

{¶ 32} The juvenile court further noted Mother's concern that R.D. and S.D. had been "in ten different placements since 2018," as well as Mother's argument that "the Agency is unable to provide a legally secure permanent placement for the children."  The juvenile court, however, found Mother's argument "overlooks the fact that the majority of these placement have [been] disrupted due to the children's aggressive behavior and their behavioral/mental health needs," as well as the fact that these needs "developed while [R.D. and S.D. were] living with [their] family."  The juvenile court additionally found it "apparent" that R.D. and S.D. "will not have the ability to enjoy any consistency unless and until they receive enough treatment to stabilize their condition[s]."  The juvenile court then noted "[t]reatment for mental health and behavioral issues must be the first priority in order for

[R.D. and S.D.] to have any possibility of maturing into stable young adults."

{¶ 33} The juvenile court next stated that R.D.'s and S.D.'s serious mental health and behavioral issues "make it impossible to complete a case plan for [their] reunification within the two year time frame allowed by statute." The juvenile court explained that this is because "[i]t is not feasible for [them] to remain in a treatment facility *and* be returned to the custody of a parent." (Emphasis sic.) The juvenile court then stated:

> Following residential treatment, [they] will need to "step down" to a therapeutic foster home, which will provide a high level of care, structure and supervision to fit [their] needs. If custody was returned to a parent, [R.D. and S.D.] would not have the benefit of stepping down to a therapeutic foster home. An abrupt transition straight from a residential facility to mother's home would not be advisable.

{¶ 34} This was in addition to the juvenile court finding Mother was not then receiving the mental health treatment that was recommended as a result of Mother's mental health assessment. The juvenile court then noted that it was suggested that Mother be assessed again, but that "this was not accomplished prior to trial. Thus, the Court has no way to ascertain whether the mother is still in need of counseling." The juvenile court noted that this was particularly troublesome in this case because R.D. and S.D. were going to need support wherever they were ultimately placed. So, as noted by the juvenile court, "[i]f the mother is not going to get the mental health assistance she needs, she may very well not have the ability to provide emotional support for her children."

{¶ 35} The juvenile court also noted that it had "no way of knowing that the mother will be able to withstand the pressure of having two children with behavioral issues returning to her home, especially considering the conflict that could arise with other members of the household," i.e., S.D.'s abuser, L.D., and Mother's paramour. The juvenile court further noted its concern that Mother had "discontinued her own counseling because she felt it was inconvenient and ineffective." The juvenile court noted that this "raises doubts" as to

whether Mother "would continuing counseling for [R.D. and S.D.] if she felt that [R.D.'s and S.D.'s] counseling was ineffective or inconvenient." The juvenile court then concluded this factor by stating:

> The Court does not take it lightly that the [children prefer] to be returned to [their] parents. Yet one parent has no home to offer, and the other has inhabitants that could act as triggers for [the children]. This does not bode well for stability or consistency. The environment quite possibly could cause the [children] to regress into old patterns of behavior. Instead, with therapy and a more positive environment in the future, [the children] may mature into * * * responsible member[s] of the community. This goal cannot be achieved without a grant of permanent custody to the Agency which has demonstrated its commitment to providing [the children] with the treatment necessary for [their] mental and behavioral health.

{¶ 36} Finally, with respect to any of the factors contained in R.C. 2141.414(E)(7) thru (11), the juvenile court determined that none of these factors applied to the case at bar.

{¶ 37} As noted above, in her second and third assignments of error, Mother argues the juvenile court erred by granting permanent custody to CCDJFS rather than returning R.D. and S.D. to her care. To support this argument, Mother claims that she presented sufficient evidence to indicate R.D. and S.D. "must be returned to her legal custody and care." Mother also claims that the juvenile court's decisions granting permanent custody to CCDJFS were "based on insufficient evidence, contrary to their best interests, and contrary to the weight of the evidence presented." According to Mother, this is because the juvenile court "minimized the strength" of R.D.'s and S.D.'s bond with her, as well as the efforts that Mother had made to remain engaged in R.D.'s and S.D.'s lives "despite difficult circumstances." Therefore, given the "terrible job the agency was doing of taking care of her precious children," Mother argues that it was error for the juvenile court to grant permanent custody of R.D. and S.D. to CCDJFS because "she alone can provide a legally secure placement for the children."

{¶ 38} Despite Mother's claims, however, we find no error in the juvenile court's decisions granting permanent custody of R.D. and S.D. to CCDJFS. This holds true even when considering R.D.'s and S.D.'s strong bond with Mother for "this is but one factor to be considered when determining the best interest of a child in a permanent custody proceeding." *In re G.W.*, 12th Dist. Butler No. CA2019-01-003, 2019-Ohio-1586, ¶ 48, citing *In re S.M.*, 12th Dist. Warren No. CA2018-07-076, 2018-Ohio-4654, ¶ 25 (strong bond between mother and child is but one factor to be considered when determining the best interest of a child); *In re A.T.-D.*, 12th Dist. Butler Nos. CA2015-03-059, CA2015-03-060, and CA2015-04-068, 2015-Ohio-2579, ¶ 30 (clear bond between father, grandmother, and child is but one factor to consider when determining the best interest of a child); *In re S.H.*, 12th Dist. Butler Nos. CA2014-12-259 and CA2015-01-008, 2015-Ohio-1763, ¶ 24 (strong bond between mother, grandmother, and child is but one factor to consider when determining best interest of a child); *In re I.B.*, 12th Dist. Butler No. CA2014-12-244, 2015-Ohio-1344, ¶ 20 (strong bond between mother and child is but one factor to consider when determining the best interest of a child). This same holds true as it relates to Mother's efforts to remain engaged with R.D.'s and S.D.'s lives for "there is not one element that is given greater weight than the others." *In re D.R.*, 12th Dist. Butler No. CA2009-01-018, 2009-Ohio-2805, ¶ 14, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 39} That is to say, given the record properly before this court, which includes evidence that Mother may not be willing and/or able to provide the support that R.D. and S.D. need to cope with their various mental health issues, returning R.D. and S.D. to Mother's care would an unnecessary gamble with R.D.'s and S.D.'s lives. This is particularly true here as it relates to S.D. given her troubling history of self-harming behavior, which includes cutting and head banging. But, as this court has stated previously, "[a] child's life is not an experiment that can be left to chance." *In re G.W.* at ¶ 52. That is, stated

differently, "'[t]he law does not require the court to experiment with a child's welfare to see if the child will suffer great detriment or harm.'" (Internal brackets omitted.) *In re B.C.*, 12th Dist. Warren Nos. CA2018-03-024 and CA2018-03-027, 2018-Ohio-2673, ¶ 30, quoting *In re R.S.-G.*, 4th Dist. Athens No. 15CA2, 2015-Ohio-4245, ¶ 53. The law instead requires the juvenile court act in a manner that, to the extent possible, serves the best interest of the child. "'A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security.'" *In re D.E.*, 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-Ohio-3341, ¶ 60, quoting *In re Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, ¶ 61.

{¶ 40} Simply stated, the juvenile court found granting permanent custody of R.D. and S.D. to CCDJFS gave them the best opportunity to grow and develop into responsible members of the community. The juvenile court found the same would not be true if R.D. and S.D. were returned to Mother's care given the other inhabitants living in Mother's home, L.D. and Mother's paramour, both of whom the juvenile court found could act as "triggers" that had the potential to cause R.D. and S.D. to regress "into old patterns of behavior." We find no error in the juvenile court's decision. We also find no error in the juvenile court's decision finding R.D's and S.D.'s "mental health needs to be taken as seriously as their physical safety," nor do we find any error in the juvenile court's decision finding that R.D.'s and S.D.'s "[t]reatment for mental health and behavior health issues must be the first priority in order for them to have any possibility of maturing into stable young adults." Therefore, because it is R.D.'s and S.D.'s best interest that is controlling rather than Mother's own desires, the juvenile court's decisions granting permanent custody of R.D. and S.D. to CCDJFS was not error. Accordingly, finding no error in the juvenile court's decisions granting permanent custody of R.D. and S.D. to CCDJFS rather than returning R.D. and S.D. to Mother's care, Mother's second and third assignments of error lack merit and are

overruled.

**Assignment of Error No. 4:**

{¶ 41} HAD TRIAL COUNSEL BEEN EFFECTIVE, HE WOULD HAVE PERSUADED THE COURT TO DISMISS THE CASE IN ITS ENTIRETY AND AWARD CUSTODY OF THE CHILDREN TO THE MOTHER.

{¶ 42} In her fourth assignment of error, Mother argues that she received ineffective assistance of counsel. We disagree.

{¶ 43} Generally, "a claim for ineffective assistance of trial counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration in its application." *In re T.W.*, 12th Dist. Warren No. CA2017-06-079, 2017-Ohio-8268, ¶ 15, citing *Rafeld v. Sours*, 5th Dist. Ashland No. 14 COA 006, 2014-Ohio-4242, ¶ 15. There is an exception, however, "for such claims in civil permanent custody appeals." *Id.*, citing *In re Tyas*, 12th Dist. Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 4. That is to say, "[a] parent is entitled to the effective assistance of counsel in cases involving the involuntary termination of his or her parental rights." *In re B.J. & L.J.*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 68. This is because "parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel * * *." *In re Tyas*, citing *In re Heston*, 129 Ohio App.3d 825, 827 (1st Dist.1998).

{¶ 44} "In determining whether counsel was ineffective in a permanent custody hearing, a reviewing court must apply the two-tier test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)." *In re C.S.*, 12th Dist. Warren No. CA2018-07-080, 2018-Ohio-4786, ¶ 33. The two-tier *Strickland* test requires the appellant to establish: "(1) that his [or her] trial counsel's performance was deficient, and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial." *In re G.C.*, 12th Dist. Butler

- 18 -

Nos. CA2016-12-237 thru CA2016-12-240, 2017-Ohio-4226, ¶ 24, citing *Strickland* at 687-688. To satisfy the two-tier test of *Strickland*, therefore, "[t]he parent must show that counsel's performance was outside the wide range of professionally competent assistance and that counsel's deficient performance prejudiced the parent." (Emphasis omitted.) *In re L.J.*, 12th Dist. Warren No. CA2014-10-124, 2015-Ohio-1567, ¶ 33. "Failure to establish either element is fatal to the claim." *In re D.S.*, 4th Dist. Pike No. 20CA905, 2020-Ohio-4794, ¶ 23.

{¶ 45} Mother initially argues she received ineffective assistance of counsel because her counsel did not advocate against the juvenile court adjudicating R.D. and S.D. neglected children and instead moved the juvenile court for a finding that R.D. and S.D. were dependent children. However, as this court stated previously, "challenges involving a parent's stipulation to a finding of neglect, dependency or abuse cannot be raised at an appeal from a later permanent custody determination." *In re W.F.*, 12th Dist. Brown No. CA2014-01-002, 2014-Ohio-2892, ¶ 12. Such a challenge must instead be made from the juvenile court's adjudicatory decision as that decision, "followed by an award of temporary custody to a children's services agency," is a final appealable order. *In re K.M.*, 12th Dist. Butler No. CA2004-02-052, 2004-Ohio-4152, ¶ 16. The same is true as it relates to Mother's argument that her counsel was ineffective for not filing objections to the magistrate's decision adjudicating R.D. and S.D. neglected children. To hold otherwise would result in this court issuing an opinion that is, at best, advisory in nature. We decline Mother's invitation provide such an opinion given that "[i]t is, of course, well settled that this court will not indulge in advisory opinions." *City of N. Canton v. Hutchinson*, 75 Ohio St.3d 112, 114 (1996).

{¶ 46} In so holding, we note another well settled principle that "an appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary

- 19 -

custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, ¶ 18. "App.R. 4 governs the timing of appeals and must be carefully followed because failure to file a timely notice of appeal under App.R 4(A) is a jurisdictional defect." *Id.*, citing *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60 (1988). Therefore, because Mother did not file an appeal from the juvenile court's adjudicatory decision and temporary custody order granting temporary custody of R.D. and S.D. to CCDJFS, Mother is now barred from arguing that her counsel provided her with ineffective assistance of counsel based on counsel's performance at any time prior to when the juvenile court issued its adjudication decision and dispositional order. *See, e.g., In re W.F.* at ¶ 10-13 (appellant's argument alleging "her counsel was ineffective for advising her to stipulate to W.F.'s dependency" was barred on appeal where appellant did not appeal from the juvenile court's dependency adjudication and temporary custody order). Accordingly, Mother's initial ineffective assistance of counsel claims lack merit.

{¶ 47} Mother also argues she received ineffective assistance of counsel because her counsel did not move to dismiss CCDJFS' motions for permanent custody since she was not properly served with copies of CCDJFS' motions. However, as discussed more fully above, the record indicates that Mother was properly served with a copy of CCDJFS' motion for permanent custody prior to the day the permanent custody was hearing was held. And, even if we were to assume Mother was correct in her assertion that she was not properly served, Mother waived any challenge to the juvenile court's personal jurisdiction over her due to any alleged violation of the notice requirement found in R.C. 2151.414(A)(1) by appearing at, and fully participating in, the permanent custody hearing. Therefore, Mother's additional ineffective assistance of counsel claim also lacks merit. Accordingly, finding no merit to any of Mother's arguments raised within her fourth assignment of error,

Mother's fourth assignment of error lacks merit and is overruled.

## Conclusion

{¶ 48} In light of the foregoing, and finding no merit to any of the arguments Mother raised within her four assignments of error, the juvenile court's decision granting CCDJFS permanent custody of two of Mother's children, R.D. and S.D., is affirmed.

{¶ 49} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.